IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JON SCOTT DICKERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | CIV. ACT. NO. 2:13cv447-TFM<br>(WO) |

**MEMORANDUM OPINION**

**I.  Procedural History**

Plaintiff Jon Scott Dickert ("Dickert") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that Dickert was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v.*

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).  Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be REVERSED and REMANDED.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .
>
> To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

---

[2] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986)  is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A.    Introduction**

Dickert was 47 years old at the time of the hearing and is a high school graduate. (R. 49, 52). He has prior work experience as forklift operator and laborer. (R. 53). Dickert alleges that he became disabled on January 8, 2010 due to pulmonary problems, broken ankle, facial fractures, depression, anxiety, splenectomy, neck pain, and memory problems. (R. 57-58, 140, 168-69). After the hearing on October 24, 2011, the ALJ found that Dickert suffers from anxiety disorder, cognitive disorder, dyssomnia, status

3

post left ankle fracture, hypertension, and tachycardia. (R. 34, 49). The ALJ determined that Dickert retains the residual functional capacity to perform sedentary work except that he should never climb ropes, ladders, or scaffolding; he should avoid concentrated fumes; he must elevate his left ankle during regularly scheduled breaks; and he requires supportive feedback when receiving criticism from a supervisor. (R. 37). In addition, the ALJ found that he is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and push or pull leg controls with his left leg; perform simple, routine tasks; sit for eight hours in an eight-hour workday; stand or walk no more than one hour during an eight-hour workday; frequently lift or carry up to ten pounds; maintain concentration for up to two hours; have brief superficial contact with the public; work independently; and adapt to minimal changes in a work setting. (*Id*.). Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Dickert can perform, including work as a circuit board assembler and bonder. (R. 41). Accordingly, the ALJ concluded that Dickert is not disabled. (R. 42).

### B. The Plaintiff's Claims

Dickert presents the following issues for review:

(1)    The Commissioner's decision should be reversed because the ALJ failed to follow the "slight abnormality" standard in finding that Dickert's degenerative disc disease in his cervical spine is non-severe.

(2) The Commissioner's decision should be reversed because the ALJ's finding that Dickert is capable of performing sedentary work is not supported by substantial evidence.

(3) The Commissioner's decision should be reversed because the ALJ failed to properly consider Dickert's credibility.

(Doc. No. 12, Pl's Br. 3).

## IV. Discussion

Dickert raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of several of the plaintiff's specific arguments because the court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for further proceedings. Specifically, the court finds that the ALJ failed to consider Dickert's spinal condition as a severe impairment, failed to consider this impairment singularly and/or in combination with his other impairments when determining his residual functional capacity to perform work, and failed to consider his inability to afford treatment when discrediting his testimony based on the lack of medical records.

First, the court concludes that the ALJ erred in determining that Dickert's neck and back condition is a non-severe impairment. At Step Two of the sequential analysis, the ALJ found that "the medical evidence of record does not include evidence to support these allegations [and] [t]herefore the claimant's alleged neck and back pain are not

medically determinable impairments." (R. 34). The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The plaintiff has the "burden of showing that his impairments are 'severe' within the meaning of the Act." *McDaniel*, 800 F.2d at 1030-31. Once the plaintiff establishes that he suffers from a severe impairment, the ALJ is not entitled to ignore that evidence.

The medical records include the results of a computerized tomography ("CT scan") of the cervical spine without contrast administered at Piedmont Hospital on January 8, 2010. (R. 247). The radiologist found a fusion anomaly both anteriorly and posterior at C2-C3; cervical spondylosis with degenerative disc and facet disease; prominent posterior spurring at C5-C6; and multilevel spinal stenosis including C3-C4, C4-C5, and C5-C6. (R. 247). Dr. John R. McNair's diagnostic impression was (1) spondylosis with multilevel bulging annuli and multilevel spinal stenosis with possible cord flattening or even mild cord compression at multiple levels and (2) developmental

fusion anomaly at C2-C3.  (R. 247).  The radiologist noted that the "cord and cervical subarachnoid spaces are not assessed on this study [and] [i]f concern for cord pathology, MRI is recommended."[3]  (*Id.*).  The ALJ, however, ignored this objective evidence.  This court, therefore, cannot conclude that the ALJ's determination that Dickert's spinal condition "is not a medically determinable impairment" is supported by substantial evidence.

Further, this court is unable to determine whether the ALJ properly considered the effects of Dickert's mental and physical impairments on his ability to perform work because the ALJ ignored evidence that Dickert suffers from a spinal condition.  The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singularly or in combination – to create a disability.  *See Gibson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).  In light of the ALJ's failure to fully and fairly consider the evidence in the record of Dickert's spinal condition, the court concludes the ALJ failed to meet his burden in this regard.  As a result of the failure to consider all of Dickert's impairments in combination, doubt is necessarily cast upon the ALJ's conclusion that Dickert is not disabled.

In addition, the court concludes that the ALJ failed to consider Dickert's inability to afford medical treatment when determining Dickert has the residual functional capacity to perform sedentary work.  The ALJ discredited Dickert's allegations of

---

[3] The record does not include an MRI of the plaintiff's cervical spine.  On remand, the court suggests that the Commissioner fully develop the record concerning the severity of Dickert's spinal condition by securing a consultative examination or additional testing by a medical specialist.  It is error for the ALJ to fail to obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision.  *See Holladay v. Bowman*, 848 F.2d 1206, 1209 (11th Cir. 1988).

disabling symptoms based on a lack of medical treatment. While the failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this Circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).

The medical records are replete with references to Dickert's inability to afford treatment. For example, on February 17, 2010, an occupational therapist noted that "funding may be an issue." (R. 361). On March 13, 2010, a psychiatrist at Grady Hospital noted that Dickert does not have health insurance but that "his mother is willing to pay out of pocket [for alcohol rehabilitation] within reason." (R. 346, 351-52). On July 21, 2010, a consultative psychologist found that Dickert is no longer taking his prescribed medications, including Vicodin for pain, Metipranolol for blood pressure, and Seroquel to facilitate sleep, because he is unable to afford them. (R. 401). In a letter dated June 16, 2011, Dr. Richard V. Meadows, a family practitioner, states that "it is very apparent that [Dickert] has difficulty with supraventricular tachycardia," that Dickert told him that he "has been out of his medicine for some time [and has] been trying to make it stretch," and that he "admonished him to not ever run out of it again." (R. 441).

In addition, Dickert testified that he did not continue sessions with a physical therapist after his hospitalization because he does not have health insurance. (R. 59). The record also includes a letter from the Office of United States Representative Martha Roby to a representative at the Social Security Administration, which states that "[t]his is a dire need case[, that] he has no health insurance and [that he] cannot go to the [doctor]." (R. 150).

Despite recommendations concerning the need for continued medical treatment and notations indicating Dickert is uninsured and unable to afford treatment, the ALJ did not properly consider whether Dickert's financial condition prevented him from seeking medical treatment.  Thus, the court cannot conclude that the ALJ's discrediting of Dickert based on his failure to seek treatment is supported by substantial evidence.

## V.     Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order will be entered.

Done this 14th day of March, 2014.

>     /s/Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE